Brian S. King, #4610
Brent Newton, #6950
Nediha Hadzikadunic, #15851
**BRIAN S. KING, P.C.**
336 South 300 East, Suite 200
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com

Attorneys for Plaintiffs

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROBERT T., and MAIA T., individually and on behalf of R.T., a minor<br><br>            Plaintiffs,<br><br>vs.<br><br>BLUE CROSS and BLUE SHIELD OF WYOMING,<br><br>            Defendant. | COMPLAINT<br><br>Case Number 2:19-cv-00269 BCW |

Plaintiffs Robert T. ("Robert"), and Maia T. ("Maia"), individually and on behalf of R. T.

("R.") a minor, through their undersigned counsel, complain and allege against Defendant Blue

Cross and Blue Shield of Wyoming ("BCBSWY") as follows:

## PARTIES, JURISDICTION AND VENUE

1. Robert and Maia are natural persons residing in Boulder County, Colorado. Robert and

    Maia are R.'s parents.

2. BCBSWY is an independent licensee of the nationwide Blue Cross and Blue Shield

    network of providers and was the insurer and claims administrator for the insurance plan

    ("the Plan") covering Robert and R. during the treatment at issue in this case.

1

3.  The Plan is a fully-insured employee welfare benefits plan under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). Robert was a participant in the Plan and R. was a beneficiary of the Plan at all relevant times.

4.  R. received medical care and treatment at Cherry Gulch from June 5, 2017, to April 15, 2018. Cherry Gulch is a licensed residential treatment facility located in Idaho, which provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems.

5.  BCBSWY denied claims for payment of R.'s medical expenses in connection with his treatment at Cherry Gulch. This lawsuit is brought to obtain the Court's order requiring the Plan to reimburse Robert and Maia for the medical expenses they have incurred and paid for R.'s treatment.

6.  This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

7.  Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, and because BCBSWY does business in Utah through its network of affiliates. Finally, in light of the sensitive nature of the medical treatment at issue, it is the Plaintiffs' desire that the case be resolved in the State of Utah where it is more likely their privacy will be preserved.

8.  The remedies the Plaintiffs seek under the terms of ERISA and under the Plan are for the benefits due under the terms of the Plan, and pursuant to 29 U.S.C. §1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendant's violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"),

an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29
U.S.C. §1132(g).

## BACKGROUND FACTS

9.  R. was admitted to Cherry Gulch on June 5, 2017.

10. On February 6, 2018, BCBSWY sent a letter to Cherry Gulch denying payment for R.'s
    treatment. The letter gave the following justification for the denial:

    > …Blue Cross Blue Shield of Wyoming has received and reviewed your facility
    > review as of 01/11/2018. Based on the documentation received, your facility does
    > not meet our minimum requirements to allow the Residential Treatment Center
    > level of care on a per diem payment methodology. Specifically, the schedule
    > provided did not demonstrate a minimum of 25 hours of clinically benefitable
    > services rendered by a licensed provider each week. However, any clinically
    > benefitable service rendered by a licensed provider can be reimbursed on a
    > professional claim (HCFA-1500) billed under the rendering provider. Claims
    > should be submitted to your local Blue Cross directly. …

11. On March 27, 2018, Maia requested a level one appeal of the denial of R.'s treatment at
    Cherry Gulch. Maia alleged that BCBSWY had violated her ERISA rights and had not
    provided her with the information that it was obligated to disclose under the statute.

12. Maia wrote that while BCBSWY had denied payment for R.'s treatment because Cherry
    Gulch had allegedly failed to provide a minimum of 25 hours of treatment, no such
    requirement was found in the Plan. She contended that nowhere in the terms of the Plan
    did it state that an hourly threshold must be met before residential treatment could be
    authorized.

13. Maia stated that Cherry Gulch met the Plan's definition of a "Facility Other Provider,"
    and satisfied the requirements listed for that service, as Cherry Gulch was "licensed, and
    provide[d] inpatient care for the treatment of mental health and substance use disorders."

14. Maia also argued that BCBSWY's denial was in violation of MHPAEA. She wrote that because the Plan offered coverage for intermediate level medical and surgical services, it was obligated under MHPAEA to offer mental health coverage "at parity" with the intermediate level medical and surgical services.

15. Maia contended that because the Plan had no minimum hourly requirements for other intermediate levels of care such as skilled nursing or inpatient rehabilitation facilities, it could not impose that same requirement on intermediate residential treatment.

16. Maia requested that in the event that BCBSWY upheld the denial, that it provide her with a copy of all documents under which the Plan was operated, including governing plan documents, mental health and substance abuse criteria, and the Plan's skilled nursing and rehabilitation facility criteria.

17. On April 27, 2018, BCBSWY sent the Plaintiffs a letter upholding the denial. The reviewer wrote in part:

> …Our Medical Review Department has reviewed the information received and made the determination that the Provider has completed, but did not pass, a facility review for RTC level of care. The claims remain as not a covered benefit. The Provider can bill professional claims for clinically benefitable services rendered by a licensed provider.
>
> **Findings:** The benefit description in the section GENERAL LIMITATIONS AND EXCLUSIONS of the Summary Plan Description states.
>
> SERVICES NOT IDENTIFIED
> Any service or supply not specifically identified as a benefit in this Agreement is not covered. … (emphasis in original)

18. The Plaintiffs exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA.

19. The denial of benefits for R.'s treatment was a breach of contract and caused Robert and

    Maia to incur medical expenses that should have been paid by the Plan in an amount

    totaling over $117,000.

20. Notwithstanding Maia's request, BCBSWY failed to provide her with any of the Plan's

    medical necessity criteria for skilled nursing or rehabilitation facilities.

### FIRST CAUSE OF ACTION

**(Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))**

21. ERISA imposes higher-than-marketplace quality standards on insurers and plan

    administrators. It sets forth a special standard of care upon plan fiduciaries such as

    BCBSWY, acting as agent of the Plan, to "discharge [its] duties in respect to claims

    processing solely in the interests of the participants and beneficiaries" of the Plan. 29

    U.S.C. §1104(a)(1).

22. ERISA also underscores the particular importance of accurate claims processing and

    evaluation by requiring that administrators provide a "full and fair review" of claim

    denials and to engage in a meaningful dialogue with the Plaintiffs in the pre-litigation

    appeal process. 29 U.S.C. §1133(2).

23. BCBSWY and the Plan breached their fiduciary duties to R. when they failed to comply

    with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in R.'s

    interest and for the exclusive purpose of providing benefits to ERISA participants and

    beneficiaries and to provide a full and fair review of R.'s claims.

24. The actions of BCBSWY and the Plan in failing to provide coverage for R.'s medically

    necessary treatment are a violation of the terms of the Plan and its medical necessity

    criteria.

## SECOND CAUSE OF ACTION

### (Claim for Violation of MHPAEA Under 29 U.S.C. §1132(a)(3))

25. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA.

26. Generally speaking, MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

27. Specifically, MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits and also makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

28. Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity, restrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A) and (H).

29. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for R.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities. For none of these types of treatment does BCBSWY exclude or restrict coverage of medical/surgical conditions based on medical necessity, geographic location,

facility type, provider specialty, or an arbitrary requirement for clinical hours of treatment in a week, in the manner BCBSWY excluded coverage of treatment for R. at Cherry Gulch.

30. In this manner, the Defendant violates 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the medical necessity criteria utilized by the Plan and BCBSWY, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

31. The requirement of a minimum of twenty-five hours of "clinically benefitable services" from Cherry Gulch is also a quantitative limitation on benefits for mental health and substance use disorder benefits that violates MHPAEA because BCBSWY does not impose similar limits or requirements on coverage for intermediate level inpatient medical and surgical treatment.

32. The violations of MHPAEA by BCBSWY and the Plan give the Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

(a) A declaration that the actions of the Defendant violate MHPAEA;

(b) An injunction ordering the Defendant to cease violating MHPAEA and requiring compliance with the statute;

(c) An order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by the Defendant to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

(d) An order requiring disgorgement of funds obtained by or retained by the Defendant as a result of their violations of MHPAEA;

(e) An order requiring an accounting by the Defendant of the funds wrongly withheld from participants and beneficiaries of the Plan and BCBSWY insured plans as a result of the Defendant's violations of MHPAEA;

(f) An order based on the equitable remedy of surcharge requiring the Defendant to provide payment to the Plaintiffs as make-whole relief for their loss;

(g) An order equitably estopping the Defendant from denying the Plaintiffs' claims in violation of MHPAEA; and

(h) An order providing restitution from the Defendant to the Plaintiffs for their loss arising out of the Defendant's violation of MHPAEA.

33. In addition, Plaintiffs are entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g)

WHEREFORE, the Plaintiffs seek relief as follows:

1. Judgment in the total amount that is owed for R.'s medically necessary treatment at Cherry Gulch under the terms of the Plan, plus pre and post-judgment interest to the date of payment;

2. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiffs' Second Cause of Action;

3. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

4. For such further relief as the Court deems just and proper.

DATED this 19th day of April 2019.

By     s/ Brian S. King
          Brian S. King
          Attorney for Plaintiffs

County of Plaintiffs' Residence:
Boulder County, Colorado.